IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRANT MANUFACTURING & ALLOYING, INC. | : <br> : <br> :    CIVIL ACTION |
| v. | : <br> :    NO. 11-3115 |
| RECYCLE IS GOOD, LLC | : |

**SURRICK, J.**                                                                                                    **NOVEMBER 30, 2011**

## MEMORANDUM

Presently before the Court is Defendant Recycle is Good LLC's Motion Pursuant to Fed. R. Civ. P. 12(f) to Strike Paragraphs of the Complaint. (ECF No. 3.) For the following reasons, Defendant's Motion will be denied.

### I. BACKGROUND

This lawsuit involves the alleged breach of a contract in which Plaintiff, a manufacturer of tin and tin alloys, provided scrap metal to Defendant, a company specializing in the processing and recycling of scrap metal. The Complaint alleges, in pertinent part, the following:

    6.      Grant is a primary manufacturer of tin and tin alloys and specialty products servicing the electronics, plating and tin chemical industries.

    7.      RIG buys and sells all types of non-ferrous scrap metal and precious metals, and specializes in recycling non-ferrous scrap metal by processing it to recover the highest level of metallics contained in the scrap metal.

    8.      Sometime prior to December 15, 2010, RIG contacted Grant about purchasing Grant's tin/lead scrap material, which is commonly referred to as dross. RIG intended to purchase the scrap and process it to recover specified metals.

    9.      RIG had purchased Grant's scrap in or about July 2010 for the same purpose, and both parties were satisfied with the transaction.

    10.     Grant had extensive experience in the past selling scrap to metal processors such

as RIG, and was familiar both with the content of the scrap metal it sold and the recovery rates it typically realized from its scrap metal.

11. On December 15, 2010, RIG emailed to Grant a proposal for the purchase of Grant's scrap metal that set forth a processing charge of $0.20 per lb and various prices per lb for tin dross, tin/copper dross, alloy dross, lead dross, Babbitt dross, solder dross and tin dross with speedy dry. Attached hereto as Exhibit A and made a part hereof is a true and correct copy of the email dated December 15, 2010 from Anthony Kest of RIG to Joe Guarini of Grant.

12. On or about December 15, 2010, Grant advised RIG of the typical content of Grant's dross and the recovery rates that Grant typically realized from its dross, and further advised RIG that it expected that the dross it provided would have the same content and realize the same recovery rates. RIG accepted and agreed to Grant's typical content and recovery rate representations.

13. Grant accepted the RIG proposal set forth in the December 15, 2010 email, and shortly thereafter prepared a shipment of approximately 32,000 lbs of dross for pick up and processing by RIG. RIG paid to Grant a deposit of $50,000.00 for the dross.

14. The December 15, 2010 email and RIG's acceptance of Grant's typical content and recovery rate representations constitute the material terms of the contract between Grant and RIG (hereafter the "December 15, 2010") pursuant to which Grant prepared the shipment of approximately 32,000 lbs of dross for pick up by RIG.

15. On January 11, 2011, RIG emailed to Grant the purported final settlement of the processing of Grant's dross. In the purported final settlement, RIG changed the processing charge from the agreed $0.20 per lb to $0.40 per lb and set forth recovery rates for the various metals contained in Grant's dross that were substantially less than RIG previously had been advised that the dross contained and substantially less than the typical recovery rates that Grant had realized in the past, all of which had been communicated to RIG prior to the December 15, 2010 email. Attached hereto as Exhibit B and made a part hereof is a true and correct copy of the email dated January 12, 2011 from Anthony Kest of RIG to Joe Guarini of Grant.

16. According to the purported final settlement, Grant was owed the sum of $25,122.00.

17. In truth, however, Grant was owed the sum of at least $101,918.57 based upon the December 15, 2010 email and the typical dross content and recovery rates that

Grant had communicated to RIG and that RIG had accepted.

18. RIG's email of January 12, 2011 and purported final settlement constitutes a breach of the December 15, 2010 contract.

In the instant Motion, Defendant asks us to strike Exhibit B to the Complaint. Exhibit B is a copy of the January 12 e-mail.[1] Defendant also requests that we strike Plaintiff's reference to

---

[1] The January 12 e-mail states in pertinent part:

We have your material finally processed. This has been a difficult dross load forcing us to double up our normal procedures and with the low metallic recovery we were hoping to negotiate lower numbers.

That being said, we now know your dross is very clean of metallics which can happen from using the proper fluxes and skimming procedures. All we ask is to increase our processing charge to $.40 to cover our costs and time. All other numbers will remain the same and with the additional processing performed the metallic increase by far benefits the processing charge.

We look forward to a continued relationship in 2011, and will have the settlement check sent out with in terms. The settlement numbers are below for your review.

| Item | Weight | % | | Recovered | Price | Total |
|---|---|---|---|---|---|---|
| Babbitt Dross | (9154) | 36% | metal% | 3295 | $ 9.00 | $29,655.00 |
| Oily tin Dross | (2925) | 22% | metal% | 643 | $ 8.50 | $ 5,465.50 |
| Tin Dross | (1414) | 34% | metal% | 481 | $10.50 | $ 5,050.50 |
| Tin/Copper Dross | (5431) | 43% | metal% | 2335 | $ 8.50 | $ 19,847.50 |
| Lead Dross | (3372) | 52% | metal% | 1753 | $ .70 | $ 1,227.10 |
| Amaloy Dross | (4724) | 61% | metal% | 2881 | $ .80 | $ 2,304.80 |
| Solder Dross | (4688) | 69% | metal% | 3234 | $ 7.50 | $24,255.00 |

```
Gross Total        31,708 lbs Recovered Total: 14,622        $87,805.40
Processing Charge  ($.40)      Metallic Average: 45%       - $12,683.20
Total:                                                       $75,122.20
Payment in Advance                                         - $50,000.00
```

Total Owed:                                                  $25,122.20

Thank you for your business & Best Regards,

(Compl. Ex. B.)

3

the January 12 e-mail in paragraphs 15, 16 and 18 of the Complaint. Specifically, Defendant contends that the January 12 e-mail and the allegations referencing it contain "communications that were part of efforts to settle a dispute" regarding the amount owed for the scrap metal and therefore are immaterial and inadmissible as evidence under Federal Rule of Evidence 408. (Def.'s Mot. 2-3.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally used "to clean up pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Immateriality has been defined as "any matter having no value in developing the issues of a case." *In re Catanella and E.F. Hutton and Co. Sec. Litig.*, 583 F. Supp. 1388, 1400 (E.D. Pa. 1984) (citation omitted). Motions under Rule 12(f) are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Id.* District courts are given broad discretion when deciding Rule 12(f) motions. *Korman v. Trusthouse Forte PLC*, No. 89-8734, 1991 U.S. Dist. LEXIS 298, at *2 (E.D. Pa. Jan. 11, 1991).

## III.  DISCUSSION

Federal Rule of Evidence 408 prohibits admission of "evidence concerning settlement or compromise of a disputed claim, where the evidence is offered to establish liability, or the validity or amount of the claim." *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 527

(3d Cir. 1995); *see* Fed. R. Evid. 408.[2] The purpose behind Rule 408 is the "promotion of the public policy favoring the compromise and settlement of disputes that would otherwise be discouraged with the admission of such evidence." *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, No. 09-2857, 2009 U.S. Dist. LEXIS 101357, at *7 (E.D. Pa. Oct. 30, 2009) (quoting *Manko v. United States*, 87 F.3d 50, 54 (2d Cir. 1996)). Litigation need not be threatened to trigger application of Rule 408. *Id.* (stating that "dispute" as employed in Rule 408 includes "both litigation and less formal stages of a dispute"). Rather, the party seeking protection of the rule must show that there is an actual dispute or difference of opinion between the parties regarding the validity or amount of the claim. *Onal v. PB Amoco Corp.*, 135 F. App'x 515, 518 (3d Cir. 2005) ("Rule 408's exclusion applies when an actual dispute or difference of opinion exists rather than when discussions crystallize to the point of threatened litigation.") (quoting *Affiliated Mfrs.*, 56 F.3d at 527).

Rule 408 is a rule of evidence that does not generally govern pleadings. *Steak Umm Co.*, 2009 U.S. Dist. LEXIS 101357, at *7 (denying motion to strike complaint and declining to

---

[2] Federal Rule of Evidence 408, titled "Compromise and Offers to Compromise" provides in relevant part:

> (a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> > (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> > (2) conduct or statements made in compromise negotiations regarding the claim . . . .

5

decide whether allegations referencing settlement could be held inadmissable at trial or summary judgment); *see also McAndrews Law Offices v. Sch. Dist. of Philadelphia*, No. 06-5501, 2007 U.S. Dist. LEXIS 9888, at *8-9 (E.D. Pa. Feb. 12, 2007) (declining to strike allegations in complaint referencing settlement discussions "simply because they may not later be admissible at trial"). However, some courts in this District have applied Rule 408 to strike allegations in pleadings that clearly disclose the substance of settlement negotiations. *See, e.g., Ciolli v. Iravani*, 625 F. Supp. 2d 276, 285-86 (E.D. Pa. 2009) (striking references to settlement discussions in complaint where plaintiff consistently characterized such discussions as settlement negotiations); *Agnew v. Aydin Corp.*, No. 88-3436, 1988 U.S. Dist. LEXIS 9911, at *10-12 (E.D. Pa. Aug. 31, 1988) (striking statements in complaint where both parties admit that statements were made at meetings scheduled for the purpose of negotiating the claims).

In its Motion, Defendant contends that Plaintiff's reference to the January 12 e-mail as a "purported final settlement" demonstrates that the allegations disclose settlement negotiations in violation of Rule 408. (Def.'s Mot. 3.) In response, Plaintiff argues that use of the term "settlement" was not intended to acknowledge that the parties engaged in any efforts to resolve a dispute, but rather was used to "describe the calculation of what was due" to Plaintiff under the alleged contract. (Pl.'s Resp. 4, ECF No. 7.)

We are unable to determine based upon the existing record whether the statements made in paragraphs 15, 16 and 18 and in the January 12 e-mail constitute settlement negotiations that would trigger application of Rule 408. Although it is possible that the phrase "purported final settlement" describes an attempt by the parties to settle a disputed claim, it is also possible that the phrase is used merely to describe industry-specific business discussions concerning the

6

calculation of amounts due for processed scrap metal. It is also conceivable that the January 12 e-mail was simply an attempt by Defendant to negotiate a lower price for the scrap metal, which would not fall within the purview of Rule 408. *See* Fed. R. Evid. 408 advisory committee's note ("The policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an admittedly due amount for a lesser sum."); *see also Tsudis Chocolate Co. v. FGH Consulting USA, Inc.*, No. 07-1574, 2008 U.S. Dist. LEXIS 72037, at *4 (W.D. Pa. Sept. 11, 2008) (finding that movant did not meet burden of establishing dispute as to validity or amount of claim where challenged documents reflected an attempt by one party to renegotiate its deal). Accordingly, Defendant has not sustained its burden of establishing that an actual dispute existed on January 12, 2011 to justify striking the challenged allegations at this pleading stage.

We will deny Defendant's motion to strike; however, we do so without prejudice to Defendant's rights to later seek to exclude this evidence by filing a motion in limine prior to trial. *See, e.g., Providence Town Center LP v. Raymours Furniture Co., Inc.*, No. 09-3902, 2009 U.S. Dist. LEXIS 106371, at *16 (E.D. Pa. Nov. 13, 2009) (denying motion to strike without prejudice); *Bailey-P.V.S. Oxides, LLC v. S and K Packaging, Inc.*, No. 08-1596, 2009 U.S. Dist. LEXIS 12804, at *4-5 (W.D. Pa. Feb. 19, 2009) (denying motion to strike allegations in complaint relating to pre-litigation offers of settlement because "at the appropriate time, the parties will have the opportunity to lay a foundation for the admission or exclusion of evidence from [ ] trial").

## IV. CONCLUSION

For the foregoing reasons, Defendant Recycle is Good LLC's Motion Pursuant to Fed. R. Civ. P. 12(f) to Strike Paragraphs of the Complaint will be denied.

An appropriate Order follows.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.