IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRANT MANUFACTURING & ALLOYING, INC. | : : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-3115 |
| RECYCLE IS GOOD LLC | : | |

**SURRICK, J.**                                                                                              AUGUST __7__, 2012

## MEMORANDUM

Presently before the Court is Defendant Recycle is Good LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e). (ECF No. 12.) For the following reasons, Defendant's Motion will be denied.

**I.      BACKGROUND**

Plaintiff Grant Manufacturing & Alloying, Inc. brings this action against Defendant Recycle is Good LLC, alleging breach of contract related to its sale of scrap metal to Defendant. Plaintiff is a manufacturer of tin and tin alloys and specialty products. (Compl. ¶ 6, ECF No. 1.) Defendant is a company that buys and sells non-ferrous scrap metal and precious metals and specializes in the processing and recycling of scrap metal. (*Id*. at ¶ 7.) Sometime prior to December 15, 2010, Defendant contacted Plaintiff with regard to purchasing tin/lead scrap metal material, commonly referred to in the industry as "dross." (*Id.* at ¶ 8.)

On December 15, 2010, Defendant's representative, Anthony Kest, emailed Plaintiff's representative, Joe Guarini, a proposal for the purchase of Defendant's scrap metal. (*Id.* at ¶ 11

& Ex. A.)[1]  The email set forth a processing charge of $0.20 per pound and prices per pound for various types of metals recovered from the dross.  (Compl. ¶ 11 & Ex. A.)  Plaintiff alleges that on or about December 15, 2010, the same date on which Defendant sent the proposal, Plaintiff advised Defendant "of the typical content of [Plaintiff's] dross[,] the recovery rates that [Plaintiff] typically realized from its dross . . . and that [Plaintiff] expected that the dross it provided would have the same content and same recovery rates."  (*Id.* at ¶ 12.)  Plaintiff further alleges that Defendant "accepted and agreed to [Plaintiff's] typical content and recovery rate representations."  (*Id.*)

Shortly after the December 15 proposal was sent, Plaintiff prepared approximately 32,000 pounds of dross for Defendant to pick up and process.  (*Id.* at ¶ 13.)  Defendant paid Plaintiff $50,000 as a deposit for the dross.  (*Id.*)  Plaintiff claims that the December 15 email, together with Defendant's acceptance of Plaintiff's representation about the typical content and recovery

---

[1] The December 15 email states, in pertinent part:

> We appreciate this opportunity and are happy to provide very competitive numbers for your tin/lead scrap material.  The following prices freight pre-paid by RIG are as follows:
>
> All dross items are based on their metallic recovery w' $.20 processing charge.
> Tin Dross = $10.00 per lb
> Tin/Copper Dross = $8.00 per lb (Lead less than 1.0%)
> Alloy Dross = $.80 per lb
> Lead Dross = $.70 per lb
> #2 Babbitt Dross = $8.50 per lb (Lead less than 1.0%)
> Solder Dross (mix) = $7.00 per lb
> Tin Dross w' Speedy Dry = $8.50 per lb
>
> Looking forward to working with you once again . . . .

(Compl. Ex. A.)

rate of its dross, constituted the material terms of the contract between the parties. (*Id.* at ¶ 14.) Plaintiff further claims that it accepted Defendant's proposal when it prepared the shipment of dross for Defendant to pick up. (*Id.* at ¶ 13.)

On January 12, 2011, Defendant emailed Plaintiff about the processing of Plaintiff's dross. (*Id.* at ¶ 15 & Ex. B.)[2] In the email, Defendant changed the processing charge from $0.20

---

[2] The January 12 email states, in pertinent part:

> We have your material finally processed. This has been a difficult dross load forcing us to double up our normal procedures and with the low metallic recovery we were hoping to negotiate lower numbers.
>
> That being said, we now know your dross is very clean of metallics which can happen from using the proper fluxes and skimming procedures. All we ask is to increase our processing charge to $.40 to cover our costs and time. All other numbers will remain the same and with the additional processing performed the metallic increase by far benefits the processing charge.
>
> We look forward to a continued relationship in 2011, and will have the settlement check sent out with in [sic] terms. The settlement numbers are below for your review.
>
> | | | | | | | |
> |---|---|---|---|---|---|---|
> | Babbitt Dross | (9154) | 36% | metal% | 3295 | $ 9.00 | $29,655.00 |
> | Oily Tin Dross | (2925) | 22% | metal% | 643 | $ 8.50 | $ 5,465.50 |
> | Tin Dross | (1414) | 34% | metal% | 481 | $10.50 | $ 5,050.50 |
> | Tin/Copper Dross | (5431) | 43% | metal% | 2335 | $ 8.50 | $19,847.50 |
> | Lead Dross | (3372) | 52% | metal% | 1753 | $ .70 | $ 1,227.10 |
> | Amaloy Dross | (4724) | 61% | metal% | 2881 | $ .80 | $ 2,304.80 |
> | Solder Dross | (4688) | 69% | metal% | 3234 | $ 7.50 | $24,255.00 |
>
> ---
>
> Gross Total:        31,708 lbs Recovered Total: 14,622        $87,805.40
> Processing Charge   ($.40)        Metallic Average: 45%        - $12,683.20
> Total:                                                           $75,122.20
> Payment in Advance                                             - $50,000.00
>
> ---
>
> Total Owed:                                                      $25,122.20
> Thank you for your business & Best Regards,

(Compl. Ex. B.)

per pound to $0.40 per pound.  (Compl. ¶ 15.)  The email also purports to set forth recovery rates for the metals found in Plaintiff's dross that Plaintiff alleges were substantially less than the recovery rates upon which the parties agreed.  (*Id.*)  Defendant refers to the increase charges as "settlement numbers."  (*Id.* at Ex. B.)  According to the purported settlement numbers, Defendant owed Plaintiff $25,122.20 for the dross.  (*Id.*)  Plaintiff alleges that it was, in fact, owed $101,918.57, based upon the December 15 email and Plaintiff's representation about the content and recovery rates of its dross.  (*Id.* at ¶ 17.)  Plaintiff claims that Defendant's January 12 email constitutes a breach of the December 15, 2010 contract between the parties.  (*Id.* at ¶ 18.)

On May 12, 2011, Plaintiff filed a Complaint asserting one count for breach of contract.  (Compl.)  On June 30, 2011, Defendant filed a motion to strike paragraphs of the Complaint under Rule 12(f) of the Federal Rules of Civil Procedure.  (ECF No. 3.)  In the motion to strike, Defendant requested that the Court strike the January 12 email and certain paragraphs contained in the Complaint on the basis that they constituted settlement negotiations.  (*Id.* at 3-5.)  On November 30, 2011, we entered a Memorandum and Order denying Defendant's motion to strike.  (ECF Nos. 10, 11.)  Defendant filed the instant Motion on December 9, 2011.  (Def.'s Mot., ECF No. 12.)  Plaintiff filed a response to the Motion on December 30, 2011.  (Pl.'s Resp., ECF No. 13.)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the sufficiency of the complaint against

the pleading requirements of Federal Rule of Civil Procedure 8. Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Pursuant to Rule 12(b)(6), all factual allegations, and reasonable inferences to be drawn therefrom, are viewed in the light most favorable to Plaintiff, the nonmoving party. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *Phillips*, 515 F.3d at 233; *see also Iqbal*, 129 S. Ct. at 1949 ("When assessing whether the complaint satisfies [the 12(b)(6)] standard, courts must treat a complaint's allegations as true.").

### B.     Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) permits a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Because Rule 8 only requires a short and plain statement of the claim, Rule 12(e) motions are "highly disfavored." *Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 371 (E.D. Pa. 2011).  "The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small—the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed." *Sun Co. v. Badger Design & Constructors*, 939 F. Supp. 365, 374 (E.D. Pa. 1996) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1376 (1990)); *see also Wood & Locker, Inc. v. Doran & Assocs.*, 708 F. Supp. 684, 691 (W.D. Pa. 1989) ("The basis for granting such a motion is unintelligibility, not lack of detail.").  Rule 12(e) motions are not substitutes for the discovery process.  *See Steinberg v. Guardian Life Ins. Co.,* 486 F. Supp. 122, 123 (E.D. Pa. 1980) (denying motion for a more definite statement where complaint was not so vague or ambiguous and "[a]dditional information may be obtained from the discovery process").  Granting the request for a more definite statement is only appropriate when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself."  *Sun Co.*, 939 F. Supp. at 368.

**III.    DISCUSSION**

In support of its Motion, Defendant argues that Plaintiff fails to plead a breach of contract claim.  Specifically, Defendant contends that Plaintiff fails to allege (1) the existence of a contract, including its essential terms, (2) how Defendant breached the contract, and (3) resulting damages, including how such damages were calculated.

In order to state a claim for breach of contract under Pennsylvania law, Plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  In addition, "[w]hen a plaintiff pleads a contract according to its legal effect, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond." *Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, No. 06-1812, 2009 U.S. Dist. LEXIS 32424, at *9-10 (E.D. Pa. Apr. 15, 2009) (citing *Cumis Ins. Soc'y, Inc., v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997)).

According to the Complaint, an agreement was reached between the parties on December 15, 2010, with respect to the sale of Plaintiff's dross to Defendant.  The Complaint clearly states that the material terms of that agreement included the processing charge of $0.20 per pound, the prices per pound for various metals recovered, and Plaintiff's representations to Defendant about the typical content and recovery rate of its dross.  (Compl. ¶¶ 11-12, 14.)  The Complaint further states that the January 12 email altered the processing charge and the recovery rates, and constituted a breach of the parties' contract.  (*Id*. at ¶¶ 15 ("[Defendant] changed the processing

charge from the agreed $0.20 per lb to $0.40 per lb and set forth recovery rates for the various metals contained in [Plaintiff's] dross that were substantially less than [Defendant] previously had been advised that the dross contained and substantially less than the typical recovery rates that [Plaintiff] had realized in the past . . . ."), 18 ("[Defendant's] email of January 12, 2011 and purported final settlement constitutes a breach of the December 15, 2010 contract.").)  Finally, Plaintiff alleges that it is owed $101,918.57 from Defendant based on the terms agreed upon in the December 15.  (*Id.* at ¶ 19.)

Accepting all of these allegations as true, we are satisfied that Plaintiff has alleged facts sufficient to withstand a motion to dismiss.  Plaintiff pleads the existence of a contract, including its essential terms.  The contract consists of the December 15 email and an agreement made about the typical content and recovery rate of Plaintiff's dross.  Plaintiff further pleads that the January 12 email constituted a breach of that contract because it altered the terms of the contract.  Finally, Plaintiff alleges damages, consisting of an amount it believes it is owed based upon the December 15 contract.

Defendant argues that the Complaint should be dismissed because the typical content and recovery rate of Plaintiff's dross is an essential term of the alleged contract and is missing from the Complaint.  We are puzzled by Plaintiff's omission of the actual rates Plaintiff alleges were represented to, and agreed upon by, Defendant, particularly since Plaintiff calculated a portion of its alleged damages, $101,918.57, based off of these rates.  However, the absence of the actual rates does not warrant dismissing the Complaint, which "states a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949; *see also Guzzi v. Morano*, No. 10-1112, 2011 U.S. Dist. LEXIS 115496, at *33-36 (E.D. Pa. Oct. 6, 2011) (denying motion to dismiss oral breach of

contract claim where allegations were "sparse" and "minimalistic" and failed to plead how damages were calculated, but sufficient to "raise the right to relief to the level of plausibility").

Defendant also argues that the Complaint fails to contain sufficient allegations as to Defendant's breach of the contract or as to resulting damages. This argument is easily rejected. The Complaint alleges that the January 12 email changed the terms of the parties' agreement by altering the processing charge and the metallic recovery rates. Defendant's characterization of its altering the terms as "seeking a small accommodation" (*see* Def.'s Mot. 4), only further supports the element that a breach occurred. Finally, Plaintiff pleads damages in the amount of $101,918.57, which it alleges is the amount owed to it under the December 15 contract. Even though the content and recovery rates that were presumably used to calculate these damages is missing, the Complaint still gives Defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Any additional details about the parties' agreement, including the actual content and recovery rates allegedly agreed upon, are appropriate for discovery. *See Guzzi*, 2011 U.S. Dist. LEXIS 115496, at *36. If discovery fails to produce the actual rates or fails to otherwise establish a viable breach of contract claim, Defendant may seek summary judgment.

In the alternative, Defendant requests that the Court enter an order requiring Plaintiff to provide a more definite statement under Rule 12(e). Defendant argues that the Complaint is vague and ambiguous with respect to each essential element of a breach of contract claim. Defendant contends that "typical content and recovery rate" is an essential term and is undefined and, therefore, Defendant is unable to admit or deny whether such rate was communicated to, and agreed upon, by Defendant. We disagree. Defendant is able to admit or deny whether Plaintiff

communicated to it the typical content and recovery rates of Plaintiff's dross.  Defendant is further able to admit or deny whether it agreed to these rates prior to picking up and processing the dross.  Plaintiff's failure to include the content and recovery rates in its Complaint is not fatal to its breach of contract claim moving forward.  Presumably, Defendant already knows these rates, or the rates will be disclosed in discovery.

Similarly, Defendant's argument that allegations about Defendant's breach and Plaintiff's damages are vague and ambiguous is meritless.  Plaintiff clearly alleges that the January 12 email constituted a breach of the December 15 contract.  In fact, Plaintiff attached a copy of the January 12 email to the Complaint, which reveals Defendant's unilateral altering of the terms of the December 15 agreement.  Although the Complaint omits how the alleged damages were calculated, this omission does not render the Complaint so vague and ambiguous that Defendant is unable to respond.

Contrary to Defendant's contention, the Complaint is not "so vague or ambiguous that [Defendant] cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  The Complaint contains "a short and plain statement" of Plaintiff's breach of contract claim as required by Rule 8.  See Fed. R. Civ. P. 8(a)(2).  Simply because the Complaint lacks the actual content and recovery rate does not mean that the Complaint is "unintelligible" or so vague or ambiguous that a response is not possible.  See Steinberg, 486 F. Supp. at 123 ("[T]he thrust of Rule 12(e) is designed to strike at unintelligibility rather than want of detail.") (citations omitted).  Accordingly, Defendant's request for an order requiring Plaintiff to provide a more definite statement is denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Recycle is Good LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) will be denied.

An appropriate Order follows.

                                             **BY THE COURT:**

                                             _____

                                             **R. BARCLAY SURRICK, J**.